**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD RAUSO**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** *et al.*, <br><br> Defendants. | Civil Action No. 20-320 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon the following motions: (1) Motion for Summary Judgment filed by Defendant Ofaniyim Holdings, LLC ("Ofaniyim") dismissing the Third Amended Complaint ("Complaint") and all cross-claims (ECF No. 62) and (2) Motion for Summary Judgment filed by Defendant United States of America ("United States") dismissing the Complaint and all cross-claims (ECF No. 63.) Plaintiff Richard Rauso ("Plaintiff" or "Rauso") opposes both motions. (ECF No. 65.) Defendants replied. ("Ofaniyim Reply", ECF No. 68; "U.S. Reply", ECF No. 69.)

  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT both motions.

**I. BACKGROUND AND PROCEDURAL HISTORY**

  This matter arises out of a slip-and-fall incident that occurred on September 15, 2018, at the premises of the United States Post Office in South Bound Brook, New Jersey ("Post Office").

1

The Complaint alleges that the injuries Plaintiff sustained in the fall were solely caused by the negligence of the Defendants in failing to provide Plaintiff with a reasonably safe walkway to and from the Post Office. (ECF No. 24.)

### A.  STATEMENT OF FACTS AND OF THE CASE[1]

On September 25, 2018, Plaintiff, a 53-year-year-old man from Somerset, New Jersey, visited the Post Office located at 11 Madison Street in South Bound Brook, New Jersey. (Ofaniyim SMF ¶ 7.) The property upon which the Post Office is located is owned by Ofaniyim and leased to the United States. (*Id.*; *see also* "Lease Agreement", Declaration of Chelsea S. Novelli ("Novelli Decl."), Ex. G, ECF No. 62-12.)

#### 1.  Plaintiff's Deposition Testimony

Plaintiff recounted the events that gave rise to this lawsuit at his deposition. ("Pl. Dep. Tr.", Novelli Decl., Ex. F, ECF No. 62-11.) On the day of the incident, Plaintiff arrived around 9:00 a.m. and parked his vehicle in the parking lot on the side of the Post Office. (*Id.* at 23:7-13.) He then walked from the parking lot to the entrance of the Post Office, utilizing the cement sidewalk connecting the parking lot to the entrance. (*Id.* at 23:8-24:17; 31:12-32:12; 33:5-7). There was also a dirt path adjacent to the cement walkway that Plaintiff did not utilize. The parties dispute whether Plaintiff even saw this dirt path on his way towards the Post Office. (*See* Pl. SMF ¶ 19, ECF No. 65-3; Ofaniyim SMF ¶ 9; U.S. SMF ¶ 19.) During Plaintiff's deposition, he testified that he walked on the cement sidewalk and that the "sidewalk is provided to go back and forth from the parking lot" (Pl. Dep. Tr. at 33:5-7), stating as follows:

> Q. When you entered the building, you're saying you walked up the concrete sidewalk path?

---

[1] The undisputed factual circumstances surrounding this negligence action, as revealed through discovery, are set forth in submissions of the parties in accordance with Local Civil Rule 56.1 (*See* "Ofaniyim SMF", ECF No. 62-5; "U.S. SMF", ECF No. 63-3; "Pl. SMFs", ECFs No. 65-2, 65-3; "Pl. SSF", ECF No. 65-1; "Ofaniyim SSF", ECF No. 68-1; "US SSF", ECF No. 69-1.) Any disagreements amongst the parties as to the timing or characterization of certain aspects of the incident in question are noted for clarity where necessary and appropriate.

> A. Correct.
> Q. Okay. You didn't take this dirt path that is shown underneath the flagpole --
> A. No.
> Q. … How come you took the concrete path?
> A. Because the ground was wet. Why would I walk up a muddy path?
> Q. Okay. So in your view the concrete was safer than walking up the mud?
> A. Yeah. That's what the path is provided for.

(*Id.* at 32:5-23.) At the time Plaintiff entered the Post Office, it was raining more than a drizzle. (*Id.* at 25:16-20.) Plaintiff was inside the Post Office for about ten minutes, during which he purchased two money orders and a stamped envelope. (*Id.* at 26:24-27:6.) He exited the Post Office by walking on the same cement sidewalk he used to enter the building. (*Id.* at 27:3-28:6.) It was raining a little harder when Plaintiff exited the Post Office than when he entered. (*Id.* at 27:20-23.)

Plaintiff's accident occurred after he exited the Post Office and was walking back towards his vehicle. (*Id.* at 21:11-12.) At that time, Plaintiff did not see any other people or obstructions on the pathway. (*Id.* at 37:22-38:3; 39:2-7.) Plaintiff returned along the right side of the same cement sidewalk that he used to walk to the Post Office. (*Id.* at 34:7-10; 34:23-35:3.) Plaintiff was looking forward as he was walking. (*Id.* at 101:22-25.) As Plaintiff was walking, his foot slipped, and he fell onto the adjacent dirt path. (*Id.* at 37:3-6; 41:9-13; 68:18-21.) Plaintiff broke his right ankle as a result of the fall. (*Id.* at 48:11-16; 82:2–7.) Plaintiff testified as to his fall as follows:

> Okay. Like I said, I was walking out of the Post Office, coming down the concrete path, and I slipped. My foot gave off the corner, my right foot.
>
> I felt myself almost twisting coming down, and I hit the ground, probably tumbled about a foot or two down, and noticed my right foot was facing to the right and my leg was still straight.
>
> So I looked at it, and that didn't look normal to me, and I started screaming. I don't recall if anybody was around. I was calling for help. My emotions were running crazy.

3

(*Id.* at 37:3-14.) During his deposition, Plaintiff testified "I just know my foot gave way for some reason. It could have been the ground was wet. Like I said, could have just slipped." (*Id.* at 39:10-13.) Further, Plaintiff stated that he did not slip on wet grass (*id.* at 71:4-7), nor did he trip on anything at the time of his fall. (*Id.* at 39:8-10.)

After his fall, Plaintiff made his way back to his vehicle, drove home, and was then transported to the hospital. (*Id.* at 41:24-42:8; 44:6-8; 44:20-24; 46:11-47:21.) At the hospital, Plaintiff told the doctor that he was walking out of the Post Office, it was raining, and he slipped off the concrete sidewalk, fell, and assumed he broke his ankle.[2] (*Id.* at 48:11-16.) Plaintiff was discharged from the hospital two days later, on September 27, 2018. (*Id.* at 49:7-8.) The same day Plaintiff was discharged, Plaintiff returned to the Post Office with Plaintiff's domestic partner, who took photographs of the premises. (*Id.* at 29:14-20.)

### 2. Deposition Testimonies of Post Office Representatives Elaine Kennedy and Patricia D. Elder

Elaine Kennedy has served as the postmaster for the Post Office since 2014.[3] ("E. Kennedy Dep. Tr.", Novelli Decl., Ex. I, ECF No. 62-14.) Kennedy testified that the Post Office had a custodian that was responsible for general upkeep of the premises, but that the custodian was no longer employed by the Post Office, as of approximately the end of 2017 to the beginning of 2018. (*Id.* at 6:15-22.) Kennedy also stated that the Post Office policy was for employees to conduct daily inspections for safety hazards. (*Id.* at 26:22-27:13). Kennedy testified that she believes that the Training Department trains employees as to what to look for in terms of identifying unsafe

---

[2] Plaintiff's deposition testimony does not explicitly state that his ankle was broken but suggests this fact. He stated that he "assumed I broke my ankle. At that point I didn't know it was broken." (Plf. Dep. Tr. 48: 13-18.) The parties, however, do not dispute that Plaintiff broke his right ankle when he fell. (U.S. SMF ¶ 40; Plf RSF ¶ 40.)

[3] According to Kennedy, while she may have been assigned to the role of postmaster for South Bound Brook, for some portion of her tenure she has been assigned to another physical location. (E. Kennedy Dep. Tr. 5:10–25.) The Court infers that this necessitated the appointment of Patricia D. Elder, discussed *infra*, as acting postmaster for South Bound Brook.

4

conditions but that she is not familiar with the training process that the employees go through. (*Id.* at 28:8-21). Her expectation for employees in identifying hazards was that there would be nothing that was unsafe to walk on. (*Id.* at 30:13-22).

During the relevant time period, in September 2018, Patricia D. Elder, was the acting postmaster of the Post Office. ("Elder Dep. Tr." at 5:21-6:1, Novelli Decl., Ex. H, ECF No. 62-13.) During her deposition, Elder testified that the Post Office employees maintained the exterior of the property. (*Id.* at 7:14-22.) The employees also inspected the property for safety hazards, including walking along the cement sidewalk from the entrance of the Post Office to the parking lot. (*Id.* at 8:23-9:5; 10:19-11:4; 12:8-17.) Further, Elder testified that she inspected the property every day and would make sure that everything was clean and nothing was on the ground. (*Id.* at 8:23-9:5.) Periodically, Elder herself would walk along the cement sidewalk from the parking lot to the entrance of the Post Office and look for safety hazards. (*Id.* at 11:17-21.) Elder also testified about the investigation process the Post Office conducts after a defect is identified as a safety hazard. (*Id.* at 17:16-18:9).

### 3. Deposition Testimony of Lisa A. Kozin

Lisa A. Kozin, the sole member of Ofaniyim, purchased the subject property in August 2015. ("Kozin Dep. Tr." at 6:1-13, Novelli Decl., Ex. I, ECF No. 62-15.) At the time, the United States was already a tenant of the property. (*Id.* at 9:1-3.)

While not specified in the Lease Agreement, Kozin testified that the United States was responsible for landscaping of the Post Office premises and Ofaniyim was responsible for the sidewalks. (*Id.* at 10:23-11:1.) Kozin testified that she visits the Post Office two times per year and during those visits, inspects the premises on behalf of Ofaniyim. (*Id.* at 12:9-13; 25:15-22.) Outside of those visits, when she was not physically on the property, Kozin relied upon the United States to notify her of any maintenance or necessary repairs. (*Id.* at 13:1-20; 25:1-22.)

5

### 4. Engineering Expert Reports

Plaintiff served two engineering analysis reports during discovery that were prepared by James A. Kennedy, P.E., Plaintiff's liability expert. ("Kennedy Rpt.", Novelli Decl., Ex. K, ECF No. 62-16; "Kennedy Supp. Rpt.", Novelli Decl., Ex. L, ECF No. 62-17.) In preparation for his first report, dated March 28, 2022, Kennedy conducted an inspection of the subject premises on April 29, 2021. (Kennedy Rpt. at 5.) He observed that the cement sidewalk was approximately four feet wide (or 47 inches). (*Id.*) In the adjacent dirt path near where Plaintiff's foot allegedly slipped off the cement sidewalk, Kennedy took measurements of the change in elevation between the dirt path and the cement sidewalk in the area identified by Plaintiff as the location of his fall. (*Id.*) The Kennedy Report measured the elevation change between the cement sidewalk and the dirt path adjacent to it and found that the drop-off was between two and five inches from the level concrete sidewalk to the adjoining dirt path below. (*Id.*) During his deposition, Kennedy stated that he measured a two-inch elevation difference where the adjoining dirt path directly touches the cement sidewalk edge. ("J. Kennedy Dep. Tr." at 64:6-16, Novelli Decl., Ex. O, ECF No. 62-20.) Kennedy also took measurements approximately 12 inches away from the cement sidewalk edge and measured a five-inch difference in elevation. (*Id.* at 36:11-19; 64:6-16.)

Jeffrey Laux, P.E., Ofaniyim's engineering consultant, also conducted an inspection of the subject premises on April 29, 2021 and August 8, 2022. ("Laux Rpt." at 6-9, Novelli Decl., Ex. M, ECF No. 62-18; "Laux Supp. Rpt." at 6-9, Novelli Decl., Ex. N, ECF No. 62-19.) Laux's opinions are expressed in his engineering reports dated April 26, 2022 and August 15, 2022. (*Id.*) The United States also served a rebuttal expert report in response to Kennedy's opinions. (Silagi Decl., Ex. 7, ECF No. 64-7.)

**II.     PROCEDURAL HISTORY**

Plaintiff commenced this premises liability case by filing the initial complaint on January 9, 2020, against the United States for negligence under the Federal Tort Claims Act. (ECF No. 1.) Plaintiff later amended his complaint on October 26, 2020, to add negligence claims against Defendants 13 Madison Street LLC and Ofaniyim (together, with the United States, "Defendants"). (ECF No. 24.)[4] The United States and Ofaniyim answered and also filed cross-claims for contribution and indemnification against all co-defendants. (ECF Nos. 27, 28.)

Following a period of discovery, both the United States and Ofaniyim (together, the "Moving Defendants") moved for summary judgment on September 30, 2022. (ECF Nos. 62, 63.)

**III.    JURISDICTION**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346 because the United States is named as a defendant, and pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under the Federal Tort Claims Act ("FTCA") against the United States. The Court has supplemental jurisdiction over the remaining state law claims against Ofaniyim under 28 U.S.C. § 1367(a).

**IV.    LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a

---

[4] Plaintiff also amended the Complaint twice previously, in August 2020 (ECF No. 12) and in September 2020 (ECF No. 18.)

grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no "genuine issue" exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

**V.     DISCUSSION**

The United States and Ofaniyim both move for summary judgment, asserting that Plaintiff has not made a *prima facie* case of negligence. Specifically, the Moving Defendants argue that Plaintiff has failed to show that either Defendant breached its duty to provide a reasonably safe walkway for the Post Office customers because Plaintiff has failed to put forth sufficient evidence that a dangerous condition existed. ("Ofaniyim Moving Br." at 7-10, ECF 62-4; "U.S. Moving Br." at 8-10, ECF No. 63-2.) Further, the Moving Defendants argue that, even assuming that the cement sidewalk or the adjacent dirt path constituted a dangerous condition, neither Defendant is

8

liable because the danger was open and obvious, and Plaintiff failed to take reasonable steps to keep himself safe from that danger. (Ofaniyim Moving Br. at 12-13; U.S. Moving Br. at 11-12.) The Moving Defendants also contend that the Kennedy Report asserts irrelevant and improper opinions and does not give rise to any issue of material fact. (Ofaniyim Moving Br. at 13-15; U.S. Moving Br. at 12-17.) Separately, Ofaniyim also argues that Plaintiff has failed to put forth evidence that Ofaniyim had actual or constructive notice of the dangerous condition that allegedly caused Plaintiff's fall. (Ofaniyim Moving Br. at 10-12.)

Although Plaintiff brings his negligence claim against the United States under the Federal Tort Claims Act, New Jersey law governs his claim. Accordingly, Plaintiff's negligence claim against both the United States and Ofaniyim are governed by the law of New Jersey. Under New Jersey law, a plaintiff must establish four elements to sustain a negligence action: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (internal citations and quotations omitted).

In premises liability cases, the scope of a defendant's duty is informed by the status of the visitor based upon the circumstances that brought him or her to the premises. *Filipowicz v. Diletto*, 350 N.J. Super. 552, 558 (App. Div. 2002). Plaintiff argues he was an invitee on the day of the incident, which Defendants do not dispute. (Opp. Br. at 4; U.S. Moving Br. at 11; Ofaninym Moving Br. at 7.). The parties likewise agree that Defendants had a duty to Plaintiff that includes the obligation to "use reasonable care to make the premises safe," *Handleman v. Cox*, 187 A.2d 708, 716 (N.J. 1963), including to guard against "dangerous conditions" on the property that the business owner either knew about or should have discovered by conducting a reasonable inspection, *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 434, 625 (1993).

9

Here, Plaintiff claims that the junction of the cement sidewalk and the adjoining dirt path was a dangerous condition due to the unmarked and unsupported several-inch elevation change. (Pl. Dep. Tr. at 32:17-33:7; 39:14-19; 40:2-5.) Plaintiff's expert measured a two-inch drop from the cement sidewalk surface to the dirt path touching the sidewalk edge. (J. Kennedy Dep. Tr. at 64:6-16; Kennedy Rpt. at 5.) One foot away from the sidewalk, Plaintiff's expert measured a five-inch drop between the sidewalk and dirt path. (*Id.*)

In New Jersey, a dangerous condition is "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). "Whether property is in a 'dangerous condition' is generally a question for the finder of fact." *Vincitore v. N.J. Sports & Expo. Auth.*, 169 N.J. 119, 123 (2001). However, a court may decide the issue of what constitutes a dangerous condition if it determines a reasonable factfinder could not find the plaintiff established that the property was in a dangerous condition. *Vincitore*, 169 N.J. at 124 (citation omitted).

New Jersey courts have found that a drop-off at the edge of a road or path can, under some circumstances, create a dangerous condition. *See, e.g., Roth*, 2009 U.S. Dist. LEXIS 70952, at *16; *Furey v. Cnty. of Ocean*, 273 N.J. Super. 300, 314-15 (App. Div. 1994) (affirming denial of directed verdict because a jury could conclude that a drop-off of two to six inches on a dirt shoulder adjacent to a roadway could be a dangerous condition because it rendered the street unsafe for vehicles); *Filipowicz*, 350 N.J. Super. at 562 (reversing summary judgment and remanding for trial because a jury could find that three and one-half-inch drop-off at the edge of a lawn, onto a sidewalk, may be a dangerous condition, depending on the visibility of the drop and the care used in maintaining the edges of the lawn); *Hughes v. Estate of Owen*, No. A-5734-17T3, 2019 N.J. Super. Unpub. LEXIS 816, at *11-12 (App. Div. Apr. 9, 2019) (concluding that there were genuine

issues of material fact as to whether a three-and-a-half-inch drop-off on a walkway leading to a public sidewalk was a hazardous condition.)

Still, "[n]ot every property condition on which persons can hurt themselves is unreasonably dangerous or hazardous. If ordinary persons who are likely to encounter a condition may be expected to take reasonable care without further warnings, ad if the condition is plainly visible . . . then the condition is not unreasonably dangerous." *Robertson v. Cousins Wholesale Produce, Inc.*, No. L-3898-07, 2010 WL 2867928, at *3 (N.J. App. Div. July 20, 2010). The mere existence of a drop-off or height differential in the walkway is not sufficient, in itself, to find a substantial risk of injury sufficient to constitute a dangerous condition. *See Portmann v. Borough of Spring Lake*, No. A-4478-12T2, 2014 N.J. Super. Unpub. LEXIS 421, at *13 (App. Div. Mar. 4, 2014) (finding that no reasonable jury could find that a slight change in elevation such as a one-half-inch rise on a single board on a boardwalk creates a substantial risk of injury to the public.)

Here, Plaintiff's own deposition testimony contradicts the existence of a dangerous condition. He testified that (1) the cement sidewalk itself had no defects or obstructions (Pl. Dep. Tr. at 39:2-7); (2) it was raining heavier than a drizzle at the time of the accident (*id.* at 25:16-21; 27:18-23); (3) he walked along the cement sidewalk to and from the Post Office (*id.* at 32:10-12; 27:18-28:10, 34:4-10); (4) on the way to the Post Office, Plaintiff himself viewed the cement sidewalk as safer than walking up the dirt path, which was muddy and wet (*id.* at 32:5-23); (5) on the way back from the Post Office, Plaintiff walked close to the right edge of the cement sidewalk such that he was in close proximity to the drop-off and the adjoining dirt path (*id.* at 38:10-25); and (6) while Plaintiff was walking back to the parking lot on the cement sidewalk, he fell and landed onto the adjacent dirt path (*id.* at 18-21; 41:9-13).

Thus, the record is clear–because Plaintiff admits as much—that the Post Office provided an adequate cement sidewalk for Plaintiff to access its building. Perhaps more importantly, even assuming that the dirt path qualifies as a dangerous condition, the record is equally clear that the condition was open and obvious, that Plaintiff was aware of the condition, and that he failed to avoid it. Under these circumstances, Defendants have not breached their obligations to Plaintiff. *See Lokar v. Church of the Sacred Heart*, 24 N.J. 549, 552 (1957) (property owner has "no obligation, save in exception circumstances . . . to protect the invitee against dangers that are known to him, or which are so apparent that he may reasonably be expected to discover them and be fully able to look out for himself.")

This case is most analogous to the one in *Barnes v. New Hampshire Ins. Co.*, 573 So. 2d 628 (La. Ct. App. 1991), an out-of-state case relied upon by the *Filipowicz* court as "particularly instructive" in determining negligence where the alleged dangerous condition is a drop-off alongside a sidewalk. 350 N.J. Super. at 561-62. In *Barnes*, the plaintiff stepped off a driveway which was elevated two to three inches above the ground. 573 So. 2d at 628. The plaintiff walked down the driveway, without looking where she was going, and fell at the drop-off when she stopped off the driveway. *Id.* In finding that the elevation between the driveway and the adjacent ground was not unreasonably dangerous, the *Barnes* court noted that the plaintiff had failed to present evidence of any imperfection in the driveway and in fact, the property owner had mowed and raked the yard to avoid an overgrown lawn. *Id.* at 630-31. Ultimately, the *Barnes* court determined that the drop-off would have been readily visible to an attentive person and thus was not a dangerous condition. *Id.* at 630.

The Court's view is also consistent with decisions from the New Jersey Appellate Division. In *Filipowicz v. Diletto*, cited above, the plaintiff fell on the defendants' property due to a three-

12

and-one-half-inch drop-off from the front lawn to the sidewalk. 350 N.J. Super. at 556. The plaintiff alleged that the drop-off was not visible to her from where she was standing due to the tall grass on the defendants' lawn. *Id.* The Appellate Division held that it was for the jury to decide whether an overgrown lawn blocking the view of a drop-off in combination with the drop-off created an unreasonable risk of harm. *Id.* at 562. Specifically, the court held that it was for the jury to evaluate other factors, such as the visibility of the drop, and whether the owner had mowed and trimmed the lawn. *Id.* In contrast to *Filipowicz*, the Court finds that it is undisputed that Plaintiff was aware of the drop-off and of the adjoining dirt path. Accordingly, there are no "other factors" for a jury to consider that would militate against the entry of summary judgment in this case.

Similarly, in *Furey*, the Appellate Division noted that the drop off on the roadway "was not a condition that was readily visible to drivers" such that "[a] driver could not reasonably be expected to have been aware of the sharp drop-off in time to monitor his or her driving accordingly." 273 N.J. Super. at 314-15. Here, again, it is undisputed that Plaintiff saw the drop-off and the adjoining dirt path.

Plaintiff attempts to avoid summary judgment by arguing that a factfinder could agree with Kennedy, his liability expert, and find that the exposed edge of the sidewalk without any barrier to protect against the drop off from the sidewalk to the adjoining ground was an unsafe condition and that the defendants negligently breached the duty they owed the plaintiff to provide him with a reasonably safe means of egress. (Opp. Br. at 10.)

Generally, an expert's opinion may be used to prove elements of negligence, particularly if the subject matter of the alleged negligent act is technical or beyond the understanding of a factfinder. *See* Fed. R. Evid. 702; *see also Ucciardi v. E.I. Du Pont Nemours & Co.*, No. 13-4952, 2016 U.S. Dist. LEXIS 174715, at *11 (D.N.J. Dec. 19, 2016) (citations omitted). At the summary

judgment stage, however, "[a]n expert report that merely offers conclusory opinions, without explicit factual foundation, is insufficient to defeat a motion for summary judgment." *Marvel v. Del. Cnty.*, No. 07-5054, 2009 U.S. Dist. LEXIS 46755, at *17 (E.D. Pa. June 2, 2009), *aff'd*, 397 Fed. Appx. 785 (3d Cir. 2010) (quotation and citation omitted).  Likewise, a plaintiff cannot rely on legal conclusions set forth by his expert in an attempt to create a factual dispute to survive summary judgment. *See, e.g., Ward v. Noonan*, 147 F. Supp. 3d 262, 279 (M.D. Pa. 2015) (ignoring expert opinion that defendant acted unreasonably because it impermissibly embraced ultimate issue under FRE 704).

Kennedy measured the change in level from the cement sidewalk to the adjacent dirt path and he opined that this drop-off was an "unreasonably hazardous condition" that caused Plaintiff to fall and become injured. (Kennedy Rpt. at 5-6, 10.) Kennedy viewed the "abrupt" drop-off as "hazardous" because it did not meet the minimum safety standard guidelines set forth in the American Society of Testing and Materials Standard Practice for Safe Walking Surfaces ("ASTM Standard"), which states that adjoining walkway surfaces shall be "flush and fair". (*Id.* at 7-8.) Kennedy also opined that both the United States and Ofaniyim acted "unreasonably" because they failed to properly inspect the exterior of the Post Office, including the part of the cement sidewalk containing the drop-off. According to Kennedy, "[t]his inaction caused the persistence of the hazard for a long period of time, likely months to years, thus causing [Plaintiff] to fall and become injured." (*Id.* at 6-7.) The Court sets aside these portions of the Kennedy Report because whether a condition is safe or dangerous, reasonable or unreasonable, is a legal conclusion that is not the proper subject for expert opinion, *see Flickinger v. Toys "R" Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012), and because the ASTM standards are not relevant given that they were not adopted by Defendants and are therefore not binding on them, *see Martin-Gomez v. United*

*Dominicans of Perth Amboy*, No. A-3095-18T1, 2020 N.J. Super. Unpub. LEXIS 467, at *22 (App. Div. Mar. 5, 2020) (finding that the ASTM Standards that formed the basis for the opinions expressed by plaintiff's expert were inapplicable because they were not adopted by the defendant); *Coolidge v. Target Corp.*, No. 18-842, 2018 U.S. Dist. LEXIS 226166, at *9-10 (C.D. Cal. July 30, 2018) (holding summary judgment was appropriate, even if plaintiff's expert opinion was admissible, as defendants did not adopt the ASTM Standard, and thus the ASTM Standard had "no authority over the case"). Thus, the Court finds that the opinions and findings from the Kennedy Report do not raise a dispute of material fact such that it would preclude summary judgment. Perhaps most importantly, as Defendants observe, insofar as Plaintiff has conceded that he was aware of the drop-off and adjacent dirt path but failed to avoid it, Kennedy's opinion as to the uneven condition between the sidewalk and adjoining ground lacks relevance.

In sum, the Court finds that Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact as to Defendants' breach of their duty of care, and that he has therefore not presented a *prima facie* case for their negligence. Accordingly, Moving Defendants are entitled to summary judgment as to Plaintiff's negligence claims.

Given that Moving Defendants are relieved of liability, their crossclaims for contribution and indemnification will be dismissed as moot. *See SRC Const. Corp. of Monroe v. Atlantic City Housing Auth.*, Civ. No. 10-3461, 2011 WL 1375680, at *4 n.8 (D.N.J. April 11, 2011); *Parkins v. An*, Civ. No. 06-3710, 2008 WL 934409, at *3 (D.N.J. March 31, 2008).

As final housekeeping matter, the Amended Complaint asserts a second, independent count for negligence against several fictional defendants, John Does 1-10, and ABC Corporations 1-10, who are alleged to have been involved in the operation of the Post Office premises. (Am. Compl. Second Count ¶¶ 1–3.) Although "[u]se of John Doe defendants is permissible in certain situations

15

until reasonable discovery permits the true defendants to be identified," these parties must be dismissed if such discovery does not reveal their proper identities. *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming district court's sua sponte dismissal under Rule 21 of fictitious parties that were not identified after discovery) (citation omitted); *Shoffler v. City of Wildwood New Jersey*, Civ No. 17-4859, 2019 WL 4165305, at *14 (D.N.J. Sept. 3, 2019) (dismissing Doe defendants after discovery yielded no identities). This may be done upon motion of a party or the Court. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Here, Plaintiff has failed to amend the Complaint or otherwise identify any of his fictitious defendants despite the fact that discovery has now closed. Accordingly, the Court will *sua sponte* dismiss the fictional defendants.

## VI.   CONCLUSION

For the reasons stated above, the Court will GRANT the Motions for Summary Judgment filed by Ofaniyim and the United States. An appropriate Order will follow.

Date: **May 31, 2023**

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**